| | | |
|---|---|---|
| PEARL M. SLONE | * | IN THE |
| Plaintiff | * | CIRCUIT COURT |
| VS | * | FOR |
| J B HUNT TRANSPORT SERVICES, INC., *et al.* | * | HARFORD COUNTY |
| | * | CASE NO. 12-C-06-2693 |
| Defendants | | |

\* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This case comes before the court on a Motion to Dismiss, or in the Alternative, for Summary Judgment filed by the Defendants and a Motion for Summary Judgment filed by the Plaintiff.

## PROCEDURAL BACKGROUND

This case was filed on October 13, 2006. An Amended Complaint was filed on November 16, 2006. The Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment that is one of the subjects of this opinion was filed on January 3, 2007. A response to that motion was filed by the Plaintiff on January 29, 2007 and a reply to the response was filed by the Defendants on March 14, 2007.

On February 26, 2007, the Plaintiff also filed a Motion for Summary Judgment which was responded to by the Defendants on March 14, 2007. It is these motions that are currently before the court.

## FACTUAL BACKGROUND

On May 2, 2005, Pearl M. Slone (hereinafter referred to as "the Plaintiff" or "Ms. Slone") became employed by J. B. Hunt Transport Services, Inc. (hereinafter referred to as "the Employer" or "J. B. Hunt") as a truck driver. She was assigned to work out of the J. B. Hunt Offices located in Perryman, Maryland.

On July 5, 2005, Ms. Sloan injured herself during the course of her employment and became unable to work. She eventually filed a Workers' Compensation claim which was not contested by the Employer and began to receive benefits.

Ms. Sloan remained on temporary total disability for almost a year and was not authorized to return to work by her doctor until July 6, 2006. Her temporary total benefits were terminated on July 30, 2006 and on August 8, 2006 Ms. Sloan contacted J. B. Hunt for the purpose of resuming employment. She was advised by them at that time that she had been terminated from her employment on August 29, 2005.

1



Based on these facts, Ms. Sloan contends in her Complaint that she was terminated from her employment because she filed a Workers' Compensation claim and that this action by the Employer violates the applicable Maryland law.

## STANDARD OF REVIEW

### I. Motion to Dismiss.

Maryland Rule 2-322 governs a motion to dismiss for failure to state a claim upon which relief can be granted. The purpose of the rule is to have legal questions decided before the trial of the action on its merits. Irvin v. Montgomery County, 239 Md. 113, 210 A.2d 359 (1965). A motion to dismiss lies where there is no justiciable controversy. Broadwater v. State, 303 Md. 461, 494 A.2d 934 (1985). A motion to dismiss serves the same function as the now defunct demurrer under former Rules 345 and 371(b). Sharrow v. State Farm Mutl. Auto. Ins. Co., 306 Md. 754, 511 A.2d 492 (1986); Ungar v. State, 63 Md. App. 472, 492 A.2d 1336 (1985), cert. denied, 475 U.S. 1066, 106 A. Ct. 1379 (1986).

In considering the sufficiency of a declaration challenged by way of a motion to dismiss for failure to state a claim, the court is required to accept as true all well-pleaded material facts in the declaration and exhibits thereto as well as any reasonable inferences that may be drawn therefrom. Flaherty v. Weinberg, 303 Md. 116, 135-36, 492 A.3d 618 (1985). To withstand a motion to dismiss for failure to state a claim, a party need only allege facts that, if proven, would entitle him or her to relief. Id. at 136.

### II. Summary Judgment.

Maryland Rule 2-501 controls the subject of Summary Judgment and in pertinent part states:

> The court shall enter a judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

The purpose of the summary judgment procedure is not to try the case or to decide the factual disputes, but to decide whether there is an issue of fact that is sufficiently material to be tried. See Matthews v. Howell, 359 Md. 152, 157-158 (2000); County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, 358 Md. 83, 747 A.2d 600 (2000); Goodwich v. Sinai Hosp. of Baltimore, Inc., 343 Md. 185, 205-06, 680 A.2d 1067, 1077 (1996); Nixon v. State, 96 Md. App. 485, 625 A.2d 404, cert. denied, 332 Md. 454, 632 A.2d 151 (1993). The function of a summary judgment hearing is merely to determine whether there is an issue of fact to be tried, and if there is none, to cause judgment to be rendered accordingly. See Matthews v. Howell, 359 Md. 152, 157-158 (2000); Hartford Ins. Co. v. Manor Inn of Bethesda, Inc., 335 Md. 135, 144, 642 A.2d 219, 224 (1994); Gross v. Sussex, Inc., 332 Md. 247, 255, 630 A.2d 1156, 1160 (1993); Beatty v. Trailmaster, 330 Md. 726, 737, 625 A.2d 1005, 1011 (1993); Arnold Developer, Inc. v. Collins, 318 Md. 259, 262, 567 A.2d 949, 951 (1990); Bachmann v. Glazer & Glazer, Inc., 316 Md. 405, 408, 559 A.2d 365, 366 (1989); King v. Bankerd, 303 Md. 98, 110-11, 492 A.2d 608, 614 (1985) (citations omitted);

Coffey v. Derby Steel Co., 291 Md. 241, 434 A.2d 564 (1981).

When ruling upon a motion for summary judgment, the trial court must address two separate issues: whether the pleading, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine dispute as to any material fact, and whether the movant is entitled to judgment as a matter of law. The trial court will not determine any disputed facts. See Scroggins v. Dahne, 335 Md. 688, 691, 645 A.2d 1160 (1994); Southland Corp. v. Griffith, 332 Md. 704, 633 A.2d 84 (1993). A summary judgment motion "is to be granted unless the parties truly dispute a material fact..." Bond v. NIBCO, Inc., 96 Md. App. 127, 135, 623 A.2d 731, 735 (1993) (internal citations omitted). "Once the moving party has provided the court with sufficient grounds for summary judgment, the non-moving party must produce sufficient evidence to the trial court that a genuine dispute to a material fact exists." Matthews v. Howell, 359 Md.152, 158 (2000). "A material fact is a fact the resolution of which will somehow affect the outcome of the case." King v. Bankerd, 303 Md. at 111, 492 A.2d at 614 (citing Lynx, Inc. v. Ordnance Prods., Inc., 273 Md. 1, 8, 327 A.2d 502, 509 (1974). Because the absence of any material factual dispute is required for a grant of summary judgment, the trial court essentially makes a ruling as a matter of law. See Warner v. German, 100 Md. App. 512, 642 A.2d 239 (1944).

In considering a motion for summary judgment, the duly shown facts which would be admissible in evidence, and all reasonable inferences deducible therefrom, must be considered in a light most favorable to the party opposing the motion and against the party making the motion. See Leonard v. Fantasy Imports, Inc., 66 Md. App. 404, 504 A.2d 660 (1986). Furthermore, the court views the facts, including all inferences, in the light most favorable to the non-moving party. See Volcjak v. Washington County Hosp. Ass'n, 124 Md. App. 481, 723 A.2d 463 (1999); see also Dobbins v. Washington Suburban Sanitary Dist., 338 Md. 341, 658 A.2d 675 (1995). If the facts are susceptible to more than one meaning, the materiality of that arguable factual dispute must be judged by looking to the inferences drawn in a light most favorable to the person against whom the motion is made and in a light least favorable to the movant. See Fireman's Fund Ins. Co. v. Rairigh, 59 Md. App. 305, 475 A.2d 509, cert. denied, 301 Md. 176, 482 A.2d 502 (1984).

One who moves for summary judgment has the burden of demonstrating clearly the absence of any genuine issue of fact and any doubt as to the existence of such an issue is resolved against the movant. However, the focus on these facts is narrowed to those facts that will "somehow affect the outcome of the case." Robb v. Wancowicz, 119 Md. App. 531, 705 A.2d 125 (1998); Fearnow v. Chesapeake & Potomac Tel. Co., 104 Md. App. 1, 49, 655 A.2d 1, 24 (1995) (internal citations omitted).

## DISCUSSION

I. **Disposition of Counts II through IV.**

In addition to J. B. Hunt Transport Services, the Plaintiff also sued Larry Coby, her former supervisor at J. B. Hunt. Count II of the Plaintiff's Complaint is for wrongful discharge against Mr. Coby, Count III is a count for vicarious liability against J. B. Hunt because of the alleged wrong doing of Mr. Coby and Count IV is a count for civil conspiracy naming Hunt and Coby as defendants.

It was agreed by the Plaintiff and the Defendant at the time of the motions hearing that Mr. Coby was an employee of J. B. Hunt Transport holding the position of supervisor of truck drivers. It was conceded by the Plaintiff that in that position Mr. Coby had no real policy making authority and was not vested with what the courts have termed the essential attributes of the employer and was therefore not personally subject to liability for this cause of action. See Moniodis v. Cook, 64 Md. App. 1, 494 A.2d 212 (1985) (cert. denied 304 Md. 631, 500 A.2d 649 (1985)). For this reason, Count II should be dismissed.

Since Mr. Coby is no longer a defendant in this case, any vicarious liability on the part of J. B. Hunt under Count III is also terminated and there can clearly be no civil conspiracy when there is only one party to an action. For this reason, Count III and IV should also be dismissed. This leaves as the sole remaining counts the Plaintiff's cause of action for wrongful discharge found in Count I and her request for punitive damages found in Count V.

**II.     Wrongful Discharge.**

The courts have long recognized the common law rule that an employment contract of indefinite duration is in fact an employment contract "at will" and can be legally terminated at the pleasure of either party at any time. State Commission on Human Relations v. Amecon Division, 278 Md. 120, 360 A.2d 1 (1976); Vincent v. Palmer, 179 Md. 362, 19 A.2d 183 (1941); Molesworth v. Brandon, 341 Md. 621, 672 A.2d 608 (1996).

A significant exception to this rule, however, is found when an individual alleges that they have been a victim of a wrongful or abusive discharge. The elements of this tort was first discussed by the Court of Appeals in the case of Adler v. American Standard Corporation, 291 Md. 31, 432 A.2d 494 (1981). In the Adler case, the plaintiff was employed by a large corporation and helped to manage that company's affairs. During the course of his employment, he discovered what he considered to be inappropriate and illegal actions taking place within the company and dutifully reported them to his superiors. He was initially commended for his diligence and was told to continue to perform his duties. According to the plaintiff, however, his immediate superiors eventually became concerned that his reports would effect their positions and as a result they asked him to resign. When he declined to do so, his employment was terminated.

The plaintiff brought suit in federal court which certified the question of whether the tort of wrongful discharge was recognized in Maryland to the Court of Appeals. The court, after reviewing the law in other states, concluded that while as a general rule Maryland continues to adhere to the common law principles regarding at will employees, there did exist a cause of action for abusive discharge by an employer of an at will employee where the motivation for the discharge contravenes some clear mandate of public policy.

The elements of the tort for wrongful discharge are:

(1)     there is an employment relationship between the plaintiff and the defendant;
(2)     the employment relationship was terminated by the employer;
(3)     the reason for the termination was in violation of a clear mandated public policy; and
(4)     there is a nexus between the employee's conduct and the employer's decision to

terminate the employment.

See King v. Marriott International, 160 Md. App. 689, 866 A.2d 895 (2005); Schapiro v. Massengil, 105 Md. App. 743, 661 A.2d 202 (1995).

Exactly when the termination of an employee does violate public policy was discussed by the Court of Appeals in Adler and in subsequent cases. Reduced to its essence, however, public policy is a principle of law which holds that "no subject can lawfully do that which has a tendency to be injurious to the public or against the public good." King v. Marriott, *supra.*, Adler, *supra.*

Further clarification of the scope of this tort was provided in the case of Makovi v. Sherwin Williams Co., 316 Md. 603, 561 A.2d 179 (1989). In the Makovi case, the court held that an employee claiming sex discrimination could not file an independent claim for abuse discharge because she already had a remedy under the remedial provisions of Maryland discrimination law. The court emphasized the point that the cause of action was intended to cover discharges that were motivated by the employee's actions not by the employee's status. Recovery for this tort was therefore limited to cases where the employee was terminated for:

(1) refusing to commit an unlawful or wrongful act;
(2) exercising a statutory right or privilege; and
(3) performing an act that public policy should encourage.

Makovi, *supra.*, at p.610-612.

Over the years, various appellate courts have further refined the scope of this tort by identifying specific types of activities that amount to public policy violations, including but not limited to:

(1) refusing to acquiesce to sexual harassment, (Insignia Residential Corporation v. Ashton, 359 Md. 560, 755 A.2d 1080 (2000));
(2) seeking legal redress from co-worker for sexual harassment, (Watson v. People's Security Life Insurance Company, 322 Md. 467, 588 A.2d 760 (1991));
(3) exercising an employee's first amendment rights, (DeBleecker v. Montgomery County, 292 Md. 498, 438 A.2d 1348 (1982));
(4) fulfilling a statutory duty to report child abuse or neglect, (Bleich v. Florence Crittidon Services of Baltimore, Inc., 98 Md. App. 123, 632 A.2d 463 (1993));
(5) refusal to take a lie detector test, (Meniodis v. Cook, 64 Md. App. 1, 464 A.2d 212 (1985)).

### III. Wrongful Discharge and Workers' Compensation Claims.

The most common form of a public policy violation is the firing an employee for a reason that is specifically proscribed by either state or federal law. The law and public policy regarding the discharge of an employee for filing a Workers' Compensation claim was clearly set forth in LE § 9-1105 which provides in relevant part as follows:

> (a) *Prohibited Act.* -- An employer may not discharge a covered employee from employment solely because the covered employee filed a claim for compensation under this title.

Maryland law is clear that a cause of action for violation of this section rests with an individual who feels that they have been harmed by the violation of its terms. Hope v. Bethesda Health Center, Inc., 813 F.2d 1306 (4th Circuit 1987).

The first extensive discussion of when this particular statutory provision provides a cause of action can be found in the case of Ewing v. Koppers Company, 312 Md. 45, 537 A.2d 1173 (1988). In the Ewing case, the plaintiff was employed at the Koppers Company and was a member of the union that defined the terms and conditions of his employment under the terms of a collective bargaining agreement. His employment was terminated on March 28, 1983 and in the termination notice, the employer assigned a number of reasons for making that decision, including his poor attendance record and his inability to work. The plaintiff filed a grievance through his union which resulted in finding by an arbitrator that he had been terminated for just cause and denied the grievance. In spite of this ruling, the plaintiff chose to file a court action against the employer. In holding that there was a cause of action created by the plaintiff's allegations, the Court of Appeals held in part as follows:

> Discharging an employee solely because that employee filed a Workers' Compensation claim contravenes the clear mandate of Maryland Public Policy. The Legislature has made a strong statement to that effect in making such conduct a criminal offense, and our perception of the magnitude of the public interest in preserving the full benefits of the Workers' Compensation system to employees, and deterring an employer from encroaching upon those rights is equally strong.

Another case involving a termination of employment after the filing of a Workers' Compensation claim is Kern v. South Baltimore General Hospital, 66 Md. App. 441, 504 A.2d 1154 (1986). In Kern, the plaintiff was employed by the hospital as an operating room technician for a number of years. On May 21, 1979 she injured her hand on the job and subsequently filed a Workers' Compensation claim. It is uncontradicted that subsequent to her injury and prior to her discharge on October 5, 1980 for excessive absenteeism, she missed a total of 245 work days. While acknowledging that this was correct, the plaintiff pointed out that all but 35 of those missed days were due to her injury. As a result of her termination, the plaintiff filed her suit for wrongful discharge. The trial court granted a summary judgment for the employer and an appeal was filed.

In affirming the decision of the trial court, the Court of Special Appeals reviewed the general law as it related to wrongful discharge and more specifically as it related to the facts of that particular case. The court placed great weight on the fact that the plaintiff acknowledged that she was discharged for missing too much time from work, albeit most of the time she was off was due to her work related injury. The court pointed out that the statute only prohibited an employer from terminating an employee for the sole reason that they filed a Workers' Compensation claim and since there are other legitimate reasons for the termination, the employee had no cause of action. The

6

court specifically rejected the employee's assertion that to adopt such a narrow standard would have a detrimental effect on employees' willingness to file Workers' Compensation claims. Summarizing their position, the court stated:

> [W]e hold that an employee's protection from discharge in retaliation for claiming statutory benefits does not include protection for excessive absence from work due to work related injury. If an employee is disabled on the job but is no longer qualified to perform the duties of his or her job, the employer may terminate that employee when it becomes obvious that the period of disability is not determinable. This interpretation of [LE § 9-1105] does not tend as appellant fears, to discourage employees from seeking medical attention and compensation.
>
> To sustain a wrongful discharge action under Maryland workers' compensation statute, an employee must allege that he or she was discharged solely and directly because of filing for benefits ... or that his or her termination violated a recognized rule of law.

Against this backdrop of Maryland law, the court is required to consider the allegations and facts presented in the present case.

As stated earlier, the Plaintiff injured herself on July 5, 2005, slightly more than sixty (60) days after she became employed by the Defendant. It is uncontradicted that she never returned to work after she sustained her injury.

The Defendant asserts that on July 15, 2006, a representative of the Defendant sent two letters to the Plaintiff. The first letter clarified the Plaintiff's leave situation and outlined what she needed to do to qualify for six weeks of unpaid personal leave. The second letter related to the continuation of her benefits through the Employer.

The Defendant also contends that a third letter was sent to Ms. Slone on August 3, 2005 pointing out that whatever leave she was entitled to receive had expired and that if she did not return to work by August 17, 2005, her employment would be terminated.

The Plaintiff denies receiving any of these letters. She asserts that she did not learn that she had been terminated from her job until August 8, 2006, over a year later when she called her former supervisor and asked to return to work.

Considering the totality of the circumstances, to the extent that the Defendant's motion is one to dismiss the Complaint, that motion will be denied. The court believes that there is sufficient factual allegations in the Plaintiff's Amended Complaint to require the Defendant to proceed.

To the extent that the Defendant's motion is one for summary judgment, the court will also deny the requested relief. The court will also deny the Plaintiff's Motion for Summary Judgment. The court believes that at this point in the case, reviewing the evidence presented so far in a light

most favorable to the Plaintiff, there is at the very least a factual dispute as to why the Plaintiff was terminated by the Defendant. At this point in time, the only "facts" before the court are the Plaintiff's assertion that she believes she was terminated for filing her Workers' Compensation claim and that she never received the letters sent by the Employer clarifying her status. While this court is not totally clear why her receipt or non-receipt of those letters is a significant factor in this case, the court will take into consideration at this juncture in the case that there is a dispute on this issue.

What additional facts or information either party manages to elicit during the course of discovery remains to be seen. The Plaintiff, however, has not cited and this court has not found any cases which state that as a matter of law there is an inference or presumption that an individual who is terminated from their employment after filing a Workers' Compensation claim is assumed to have been terminated because the claim was filed. This case will reach a point where it will be the Plaintiff's obligation to produce some sort of evidence that she was terminated solely for filing her claim.

It is noted that the Defendant has, since the argument on the original motion in this case, filed a supplemental reply to which the Plaintiff responded on July 3, 2007. In this supplemental motion the Defendant asserts that the Plaintiff's driving privileges were suspended on August 25, 2005 as a result of her failure to attend a traffic citation hearing. They contend that this made her ineligible to return to work since she was required to drive during the course of her employment. The Plaintiff in turn asserts that the Defendant did not even learn of the suspension until recently so they cannot contend it could not have been a reason for her termination. While this set of facts may have an impact on any damages or other harm that the Plaintiff might theoretically recover as a result of any wrongful termination, this is not in an of itself give rise to grounds to dismiss the complaint or grant a summary judgment at least at this point in time.

The court believes that the burden of proof will be on the Plaintiff at some point in time to produce affirmative evidence that her discharge was for a reason other than her failure to return to work. Whether she is able to do so and whether this case can survive another motion for summary judgment after all discovery has been complete remains an open question. At this point in this case and considering the limited amount of information and evidence that has been presented, this court must deny the motions that have been filed.

## CONCLUSION

For the reasons set forth above, it is the opinion of this Court that:

(1)  the Plaintiff's Motion for Summary Judgment should be denied;

(2)  the Defendant's Motion to Dismiss should be denied; and

(3)  the Defendant's Motion for Summary Judgment should be denied.

*W.O.*
**WILLIAM O. CARR, JUDGE**

cc:

B. Adrian Wells, Esquire
118 N. Howard Street, Unit 504
Baltimore, MD 21201

Christopher J. Drewniak, Esquire
Ryan & Drewniak, P.A.
1997 Annapolis Exchange Parkway, Suite 420
Annapolis, MD 21401